UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

KAY CUNNINGHAM,                        )
                                       )
          Plaintiff,                   )
                                       )
     vs.                               )     Case No. 1:15 CV 117 ACL
                                       )
CAROLYN W. COLVIN,                     )
Acting Commissioner of Social Security,)
                                       )
          Defendant.                   )

## MEMORANDUM AND ORDER

Plaintiff Kay Cunningham brings this action pursuant to 42 U.S.C. § 405(g), seeking

judicial review of the Social Security Administration Commissioner's denial of her application for

Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.

An Administrative Law Judge (ALJ) found that, despite Cunningham's severe

impairments of fibromyalgia and obesity, she was not disabled as she had the residual functional

capacity ("RFC") to perform jobs that exist in significant numbers in the national economy.

This matter is pending before the undersigned United States Magistrate Judge, with

consent of the parties, pursuant to 28 U.S.C. § 636(c).   A summary of the entire record is

presented in the parties' briefs and is repeated here only to the extent necessary.

### I.   Procedural History

Cunningham filed an application for DIB on September 7, 2012, claiming that she became

unable to work due to her disabling condition on August 1, 2010.   (Tr. 123-29.)   Cunningham's

claim was denied initially.   (Tr. 70-74.)   Following an administrative hearing, Cunningham's

claim was denied in a written opinion by an ALJ, dated January 30, 2014.   (Tr. 11-20.)

Cunningham then filed a request for review of the ALJ's decision with the Appeals Council of the Social Security Administration (SSA), which was denied on April 24, 2015.  (Tr. 5, 1-4.)  Thus, the decision of the ALJ stands as the final decision of the Commissioner.  *See* 20 C.F.R. §§ 404.981, 416.1481.

In the instant action, Cunningham argues that the ALJ erred "by failing to provide an RFC supported by substantial evidence by not properly evaluating Cunningham's migraines, by failing to set forth a narrative statement in support of the RFC, and by failing to properly assess Cunningham's credibility."  (Doc. 12 at 6.)

## II.  The ALJ's Determination

The ALJ found that Cunningham meets the insured status requirements of the Social Security Act through December 31, 2016, and has not engaged in substantial gainful activity since August 1, 2010, the alleged onset date.  (Tr. 13.)

In addition, the ALJ concluded that Cunningham had the following severe impairments: fibromyalgia and obesity.  *Id.*  The ALJ found that Cunningham did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.  (Tr. 15.)

As to Cunningham's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can only occasionally climb ramps, stairs, ladders, ropes, and scaffolds.   She should avoid concentrated exposure to hazardous conditions.

(Tr. 15.)

The ALJ found that Cunningham's allegations regarding her limitations were not entirely

credible.   (Tr. 16.)   In determining Cunningham's RFC, the ALJ indicated that he was assigning

"great weight" to the opinions of the state agency physicians and psychologist, as they were

supported by the record as a whole.   (Tr. 17.)

The ALJ further found that Cunningham was unable to perform any past relevant work.

(Tr. 18.)   The ALJ noted that a vocational expert testified that Cunningham could perform jobs

existing in significant numbers in the national economy, such as bottling line attendant, hospital

products assembler, and folding machine operator.   (Tr. 19.)   The ALJ therefore concluded that

Cunningham has not been under a disability, as defined in the Social Security Act, from August 1,

2010, through the date of the decision.   (Tr. 20.)

The ALJ's final decision reads as follows:

> Based on the application for a period of disability and disability
> insurance benefits filed on September 7, 2012, the claimant is not
> disabled under sections 216(i) and 223(d) of the Social Security Act.

*Id.*

## III.   Applicable Law

### III.A.   Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial

evidence on the record as a whole.   42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401

(1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002).   Substantial evidence is less than a

preponderance of the evidence, but enough that a reasonable person would find it adequate to

support the conclusion.   *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001).   This "substantial

evidence test," however, is "more than a mere search of the record for evidence supporting the

Commissioner's findings."   *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal

quotation marks and citation omitted).    "Substantial evidence on the record as a whole . . .

requires a more scrutinizing analysis."    *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence

on the record as a whole, the Court must review the entire administrative record and consider:

1.    The credibility findings made by the ALJ.

2.    The plaintiff's vocational factors.

3.    The medical evidence from treating and consulting physicians.

4.    The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5.    Any corroboration by third parties of the plaintiff's impairments.

6.    The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal

citations omitted).    The Court must also consider any evidence which fairly detracts from the

Commissioner's decision.    *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050

(8th Cir. 1999).    However, even though two inconsistent conclusions may be drawn from the

evidence, the Commissioner's findings may still be supported by substantial evidence on the

record as a whole.    *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v.

Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)).    "[I]f there is substantial evidence on the record as a

whole, we must affirm the administrative decision, even if the record could also have supported an

opposite decision."    *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation

marks and citation omitted).  *See also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).

### III.B.  Determination of Disability

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905.   A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any other kind of substantial gainful work which exists … in significant numbers either in the region where such individual lives or in several regions of the country."   42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations.   20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007).   First, the Commissioner will consider a claimant's work activity.   If the claimant is engaged in substantial gainful activity, then the claimant is not disabled.   20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities."   *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003).   "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id*. § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141, 107 S.Ct. 2287, 2291 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks

omitted); *see* 20 C.F.R. § 416.945(a)(1).   The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."   20 C.F.R. § 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations.   *See id.*   If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or her age, education, and work experience.   *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000).   The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy.   *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v).   If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled.   If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled.   20 C.F.R. §416.920(a)(4)(v).   At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant.   *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

The evaluation process for mental impairments is set forth in 20 C.F.R. §§ 404.1520a, 416.920a.   The first step requires the Commissioner to "record the pertinent signs, symptoms,

findings, functional limitations, and effects of treatment" in the case record to assist in the determination of whether a mental impairment exists. *See* 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). If it is determined that a mental impairment exists, the Commissioner must indicate whether medical findings "especially relevant to the ability to work are present or absent." 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2). The Commissioner must then rate the degree of functional loss resulting from the impairments in four areas deemed essential to work: activities of daily living, social functioning, concentration, and persistence or pace. *See* 20 C.F.R. §§ 404.1520a(b)(3), 416.920a(b)(3). Functional loss is rated on a scale that ranges from no limitation to a level of severity which is incompatible with the ability to perform work-related activities. *See id.* Next, the Commissioner must determine the severity of the impairment based on those ratings. *See* 20 C.F.R. §§ 404.1520a(c), 416.920a(c). If the impairment is severe, the Commissioner must determine if it meets or equals a listed mental disorder. *See* 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2). This is completed by comparing the presence of medical findings and the rating of functional loss against the paragraph A and B criteria of the Listing of the appropriate mental disorders. *See id.* If there is a severe impairment, but the impairment does not meet or equal the listings, then the Commissioner must prepare an RFC assessment. *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

## IV.  Discussion

Cunningham argues that the RFC formulated by the ALJ is not supported by substantial evidence. Specifically, Cunningham contends that the ALJ erred by not properly evaluating her migraines at step two, failing to set forth a narrative statement in support of the RFC, and in failing to properly assess her credibility.

**1.  Migraines**

Cunningham argues that the ALJ erred in failing to find her migraines were a severe impairment at step two of the sequential evaluation, and in failing to assess additional limitations resulting from her migraines when determining her RFC.

An impairment is severe if it has more than a minimal impact on an individual's ability to do basic work activities. *See* 20 C.F.R. § 404.1521(a). On the other hand, an impairment "is not severe if it amounts to only a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). Although "severity is not an onerous requirement for the claimant to meet … it is also not a toothless standard." *Id.* at 707. Finally, "[i]t is [Plaintiff's] burden to establish that h[er] impairment or combination of impairments are severe." *Id.*

The ALJ discussed Cunningham's migraines at step two. He stated that Cunningham has had no significant treatment for her migraines, as would be expected for a severe impairment. (Tr. 13.) The ALJ noted that Cunningham's only documented emergency room treatment for complaints of migraines was a single visit in 2011. (Tr. 13-14.)

The ALJ did not err in failing to find Cunningham's migraines severe. Cunningham contends that she received treatment for her migraines from both the emergency room and treating physicians on eleven occasions, was prescribed medication, and continued to have significant symptoms. The medical records to which Cunningham cites, however, reveal one trip to the emergency room (Tr. 289-90) and eight visits to treating doctors (Tr. 257, 220-27, 253, 247, 249, 251, 305, 299.) The ALJ acknowledged that Cunningham presented to the emergency room with complaints of a migraine on one occasion, on July 17, 2011. (Tr. 13, 289-90.)

As to the eight doctor visits Cunningham cites, the record reveals that references were made to Cunningham's migraines on each occasion, but the purpose of the visit was not generally

for treatment of migraines. For example, on November 18, 2010, Cunningham presented to Daniel G. Domjan, M.D., for follow-up regarding treatment for Lyme disease. (Tr. 256.) Cunningham also listed many complaints, including fatigue, chills, heartburn, backache, neck pain, and headache. (Tr. 257.) Dr. Domjan's diagnoses included "menstrual migraine headache." (Tr. 258.) He prescribed many medications for her various complaints, including Tramadol[1] and Topamax.[2] *Id.* On March 1, 2011, Cunningham presented to Gordon D. Christensen, M.D., with complaints of fatigue and a concern that her "Lyme disease" was coming back. (Tr. 220.) Cunningham reported that she had experienced "migraine headaches" since childhood. (Tr. 223.) She stated that her migraine pain responded to Tramadol and ibuprofen or naproxen; and Relpax[3] provides immediate relief. (Tr. 223-24.) Dr. Christensen diagnosed Cunningham with fibromyalgia and prescribed medication for this diagnosis, but did not diagnose migraines or prescribe medication to treat migraines. (Tr. 228-29.) Cunningham presented to Dr. Domjan for medication refills on June 27, 2011, at which time she reported that her migraines had improved. (Tr. 253.) Dr. Domjan's diagnoses included "menstrual migraine headache which is improving." (Tr. 254.) On August 4, 2011, Cunningham presented to Dr. Domjan to obtain lab results. (Tr. 251.) It was noted that Cunningham had gone to the emergency room five weeks prior due to a headache. *Id.* Cunningham saw Dr. Domjan for a check-up and medication refills on November 1, 2011. (Tr. 249.) Cunningham complained of "usual aches and pains," and reported that her migraines had improved. (Tr. 249.) Cunningham presented to Dr. Domjan for a check-up and medication refills on January 31, 2012, at which time it was noted

---

[1] Tramadol is indicated for the treatment of moderate to moderately severe pain. *See* WebMD, http://www.webmd.com/drugs (last visited September 21, 2016).
[2] Topamax is indicated for the treatment of migraine headaches. *See* WebMD, http://www.webmd.com/drugs (last visited September 21, 2016).
[3] Relpax is indicated for the treatment of headaches and migraines. *See* WebMD, http://www.webmd.com/drugs (last visited September 21, 2016).

she had last had a migraine one week prior.   (Tr. 247.)   On November 8, 2012, Cunningham saw

Dr. Domjan for a check-up.   (Tr. 304.)   She complained of numbness and tingling, and reported

that her headaches were improving.   (Tr. 305.)   Finally, at a February 11, 2013 check-up,

Cunningham reported that her worst pain was down her spine and in her extremities.   (Tr. 299.)

With regard to her headaches, Dr. Domjan noted that Cunningham "needs her sunglasses on most

of the day."   (Tr. 299.)   Dr. Domjan's diagnoses included obesity, polyneuropathy, and chronic

pain.   (Tr. 299.)

The medical records cited by Cunningham and discussed above support the ALJ's finding

that Cunningham "had no significant treatment for her migraines, as would be expected for a

severe impairment."   (Tr. 13.)   Aside from a sole emergency room visit in 2011, Cunningham did

not seek medical treatment specifically for migraines as she suggests in her Brief.   (Tr. 13-14.)

Rather, head pain was discussed, along with many other pain complaints, during routine check-ups

or follow-ups regarding her fibromyalgia.   The record also notes improvement in Cunningham's

migraines, and reveals that medication relieved her head pain.   Further, the medical evidence

upon which Cunningham relies does not support her claim that she was required to lie down four to

five times each month due to migraines.   Thus, the ALJ did not err in finding Cunningham's

migraines non-severe, nor did he err in failing to include such a limitation in Cunningham's RFC.

## 2.    Credibility and RFC

Cunningham argues that the ALJ erred in assessing her credibility.   Cunningham contends

that the ALJ did not explain how the credibility factors weighed for or against her credibility when

determining her RFC.   Cunningham further argues that the ALJ's RFC is not supported by

substantial evidence, and that the ALJ did not consider her obesity when determining her RFC.

As a general matter, credibility determinations "are the province of the ALJ, and as long

as 'good reasons and substantial evidence' support the ALJ's evaluation of credibility," the Court

will defer to her decision.   *See Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016) (quoting

*Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)).   Furthermore, an ALJ "may decline to

credit a claimant's subjective complaints 'if the evidence as a whole is inconsistent with the

claimant's testimony.'"   *Julin*, 826 F.3d at 1086 (quoting *Cox v. Barnhart*, 471 F.3d 902, 907 (8th

Cir. 2006)).   In evaluating Plaintiff's credibility regarding the extent of her symptoms, the ALJ

must consider all of the evidence, including objective medical evidence, and evidence relating to

the factors enumerated in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984), including: (1)

Plaintiff's daily activities; (2) the duration, frequency, and intensity of Plaintiff's pain; (3)

precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication;

and (5) Plaintiff's functional restrictions.   *See Julin*, 826 F.3d at 1086; *see also* 20 C.F.R. §

416.929(c).   The ALJ does not need to discuss each factor separately; rather, the court will review

the record as a whole to ensure relevant evidence was not disregarded by the ALJ.   *See McCoy v.

Astrue*, 648 F.3d 605, 615 (8th Cir. 2011); *see also Dunahoo*, 241 F.3d 1033, 1038 (8th Cir. 2001)

("If the ALJ discredits a claimant's credibility and gives a good reason for doing so, we will defer

to its judgment even if every factor is not discussed in depth.").

        Here, the ALJ properly discounted Cunningham's credibility based upon her own

testimony, the objective medical evidence of record, Cunningham's daily activities, and the lack of

restrictions set out by treating and examining physicians.   The ALJ noted that no examining

physician expressed an opinion that Cunningham was limited.   (Tr. 17.)   The lack of significant

limitations set out by treating and examining physicians is relevant to a determination of disability.

*See Goff v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005).

        The ALJ noted that Cunningham testified that she stopped working in 2010 to move to

Missouri.   (Tr. 18, 29.)   The ALJ properly considered the fact that Cunningham stopped working for reasons other than her alleged disability when assessing her credibility.   *See Kelley v. Barnhart*, 372 F.3d 958, 961 (8th Cir. 2004) (claimant's leaving work for reasons unrelated to medical condition detracted from credibility); *Depover v. Barnhart*, 349 F.3d 563, 566 (8th Cir. 2003) (claimant left his job because the job ended; therefore, not unreasonable for the ALJ to find that his suggested impairments were not as severe as he alleged).

The ALJ next noted that Cunningham performed a variety of jobs after her alleged onset of disability date, including light electrical work for her daughter, and baby-sitting her grandchildren. (Tr. 18, 31.)   The ALJ properly considered Cunningham's ability to perform part-time work after her alleged onset of disability date as detracting from her allegation of total disability.   *See* 20 C.F.R. § 404.1574(a) (if a claimant has worked, the Commissioner should take this into consideration when determining if the claimant is able to engage in substantial gainful activity); *Goff*, 421 F.3d at 792 ("Working generally demonstrates an ability to perform a substantial gainful activity."); *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) ("Acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility.").   *See also Harris v. Barnhart*, 356 F.3d 926, 930 (8th Cir. 2004) ("It was also not unreasonable for the ALJ to note that Harris's...part-time work [was] inconsistent with her claim of disabling pain.").

Finally, the ALJ discussed Cunningham's daily activities.   The ALJ stated that Cunningham takes care of chickens on her property, does some gardening, prepares meals, shops, and helps her disabled husband with tasks such as getting out of bed and bathing.   (Tr. 18, 42-44, 183-87.)   Although Eighth Circuit cases sometimes send "mixed signals" concerning the relevance of a claimant's daily activities in credibility determinations, the daily activities admitted by Cunningham are in excess of other cases where the daily activities have undercut a plaintiff's

credibility.   *See Clevenger v. Social Sec. Admin.*, 567 F.3d 971, 976 (8th Cir. 2009) (acknowledging that the Eighth Circuit has sent "mixed signals" concerning the importance of daily activities, but agreeing that the daily activities in that case—doing laundry, washing dishes, changing sheets, ironing, preparing meals, driving, attending church, and visiting friends and relatives—supported an ALJ's decision to discredit a plaintiff's assertions of disabling pain).   The daily activities in this case exceed those in *Clevenger*.   *See also Andrews v. Colvin*, 791 F.3d 923, 929 (8th Cir. 2015) (permitting an ALJ to discount a fibromyalgia plaintiff's credibility in part based upon the claimant's daily activities, including the ability to cook, clean, drive, shop, and take care of personal grooming and hygiene).   Cunningham's daily activities are another factor supporting the ALJ's decision to discount Cunningham's credibility.

For all of the above reasons, the ALJ gave numerous, specific reasons for discounting Plaintiff's credibility, and that determination is entitled to deference in this Court.   *Buckner*, 646 F.3d at 558.

As stated above, Cunningham also argues that the ALJ erred in determining her RFC. RFC is what a claimant can do despite her limitations, and it must be determined on the basis of all relevant evidence, including medical records, physician's opinions, and claimant's description of her limitations.   *Dunahoo v. Apfel,* 241 F.3d 1033, 1039 (8th Cir. 2001).   Although the ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant evidence, a claimant's RFC is a medical question.   *See Lauer v. Apfel,* 245 F .3d 700, 704 (8th Cir. 2001); *Singh v. Apfel,* 222 F.3d 448, 451 (8th Cir. 2000).   Therefore, an ALJ is required to consider at least some supporting evidence from a medical professional.   *See Lauer,* 245 F.3d at 704 (some medical evidence must support the determination of the claimant's RFC); *Casey v. Astrue,* 503 F.3d 687, 697 (8th Cir. 2007) (the RFC is ultimately a medical question that must find at least

some support in the medical evidence in the record).    An RFC determination made by an ALJ will be upheld if it is supported by substantial evidence in the record.    *See Cox v. Barnhart,* 471 F.3d 902, 907 (8th Cir. 2006).

Cunningham contends that the ALJ failed to consider the effect of Cunningham's obesity on her RFC in accordance with Social Security Ruling (SSR) 02-1p.

The ALJ found that Cunningham's obesity was a severe impairment.    (Tr. 13.)    He noted that Cunningham weighs 310 pounds and has a height of 69 inches, which results in a BMI of 46. (Tr. 15.)    The ALJ cited the following language of SSR 02-1p: "the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately."    *Id.*    The ALJ then stated that the "effects of the claimant's obesity have been considered when determining a residual functional capacity for the claimant."    *Id.*

The ALJ properly considered Cunningham's obesity when determining her RFC.    He discussed Cunningham's weight and BMI, and specifically stated that he had considered the effects of Cunningham's obesity when making his RFC determination.    (Tr. 15.)    *See Heino v. Astrue,* 578 F.3d 873, 881 (8th Cir.2009) ("[W]hen an ALJ references the claimant's obesity during the claim evaluation process, such review may be sufficient to avoid reversal.")    The ALJ limited Cunningham to light work, which involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds," a "good deal of walking or standing, or…sitting most of the time with some pushing and pulling of arm or leg controls."    20 C.F.R. §§ 404.1567(b), 416.967(b).    The ALJ further limited Cunningham to only occasional climbing of ramps, stairs, ladders, ropes, and scaffolds, and avoidance of concentrated exposure to hazardous conditions.    (Tr. 15.)    This RFC adequately takes into account the effect of Cunningham's obesity.

Cunningham points out that the ALJ did not consider Dr. Christensen's statement on March 1, 2011 that Cunningham was "very overweight and this is undoubtedly a major component of her presentation." (Tr. 228.) The ALJ's failure to discuss this statement is not reversible error. First, the ALJ's failure to cite specific evidence does not mean he did not consider that evidence. *See Moore ex rel. Moore v. Barnhart,* 413 F.3d 718, 721 n. 3 (8th Cir. 2005) ("The fact that the ALJ's decision does not specifically mention the [particular listing] does not affect our review."); *Montgomery v. Chater,* 69 F.3d 273, 275 (8th Cir. 1995). Second, although Dr. Christensen indicated that Cunningham's weight contributed to her symptoms of fatigue and pain, he did not indicate that Cunningham was more limited than the RFC found by the ALJ. In fact, Dr. Christensen advised Cunningham to "establish a regular routine of light…aerobic exercise," and suggested that "walking is a good exercise." (Tr. 229.) Thus, the ALJ did not err in evaluating the effect of Cunningham's obesity on her RFC.

As to the opinion evidence, the ALJ indicated that he was assigning "great weight" to the opinions of the state agency physicians and psychologist. (Tr. 17.) On October 25, 2012, James Spence, Ph.D., expressed the opinion that Cunningham's mental impairments were non-severe.[4] (Tr. 53-54.)

On January 28, 2013, Charles K. Lee, M.D., expressed the opinion based upon a review of the record that Cunningham retained the capacity for a full range of light work activity. (Tr. 278.) Dr. Lee cited Cunningham's reported activities of daily living of helping her disabled husband, caring for children and animals, preparing meals, cleaning, grocery shopping, driving, and socializing at church two to three times a week. (Tr. 277.) With regard to the medical evidence, Cunningham accurately points out that Dr. Lee only discussed records from two doctor visits. Dr.

---

[4]Cunningham does not dispute the ALJ's finding that her mental impairments were non-severe.

Lee first discussed Cunningham's March 2011 visit with Dr. Christensen, at which Cunningham's physical examination was positive for fibromyalgia.   (Tr. 277, 218-29.)   Dr. Lee also discussed an August 2012 visit during which Cunningham reported working in her garden every day and doing better as far as aches and pains.   (Tr. 277, 242.)   Dr. Domjan noted that Cunningham's exogenous obesity was improving, her hypothyroidism was well-controlled, arthropathy of multiple sites was unchanged, chronic pain was unchanged, and neuropathy was unchanged.   *Id.* Cunningham denied Dr. Domjan's offer of Savella[5] for worsening neuropathy and instead requested muscle relaxers.   *Id.*

Cunningham contends that the ALJ erred in relying on the opinion of a non-examining physician and argues that the ALJ should have further developed the record.   The ALJ did not, however, merely rely on the opinion of Dr. Lee.   Rather, the ALJ summarized the medical evidence, which revealed generally normal examinations other than arthralgias and fibromyalgia tender points.   (Tr. 18, 219-29, 240-309.)   Cunningham was consistently noted to have normal joint range of motion, no swelling, negative neurologic examination, and was in no acute distress. *Id.*   This medical evidence is sufficient to support the ALJ's finding that Cunningham can perform a range of light work, particularly where other evidence in the record is consistent with the ALJ's conclusions.   *See Steed v. Astrue*, 524 F.3d 872, 876 (8th Cir. 2008) (upholding the ALJ's finding that the plaintiff could perform light work based on largely mild or normal objective findings regarding her back condition, despite the fact that the medical evidence was 'silent' with regard to work-related restrictions such as the length of time she [could] sit, stand, and walk and the amount of weight she can carry"); *Flynn v. Astrue*, 513 F.3d 788, 793 (8th Cir. 2008) (finding that physicians' observations that the claimant had normal muscle strength and mobility

---

[5]Savella is indicated for the treatment of fibromyalgia.   *See* WebMD, http://www.webmd.com/drugs (last visited September 21, 2016).

constituted medical evidence supporting the ALJ's conclusion that the claimant could lift 20 pounds occasionally and 10 pounds frequently).   The ALJ's RFC determination is slightly more restrictive than the opinion of Dr. Lee.   In addition, as previously discussed, the ALJ performed a proper credibility analysis and found that Cunningham's subjective allegations were not entirely credible.   Thus, the RFC formulated by the ALJ is supported by substantial evidence in the record as a whole.

After determining Cunningham's RFC, the ALJ properly relied on the testimony of a vocational expert to find that Cunningham could perform other work existing in significant numbers in the national economy with her RFC.   (Tr. 19.)   *See Robson v. Astrue*, 526 F.3d 389, 392 (8th Cir. 2008) (holding that a vocational expert's testimony is substantial evidence when it is based on an accurately phrased hypothetical capturing the concrete consequences of a claimant's limitations).   The hypothetical question posed to the vocational expert was based on the RFC formulated by the ALJ, which accounted for all of Cunningham's credible limitations.   Thus, the ALJ's decision finding Cunningham not disabled is supported by substantial evidence.

Accordingly, Judgment will be entered separately in favor of Defendant in accordance with this Memorandum.


**/s/** Abbie Crites-Leoni
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 26th day of September, 2016.